THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SANTOS VILLARINY COLÓN, Defendant and Appellant.

No. 14326. Argued July 3, 1950.—Decided July 14, 1950.

R. *Muñoz Ramos* and *Inés Acevedo de Campos* for appellant.
*Vicente Géigel Polanco, Attorney General,* and *J. Rivera Ba-*
*rreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Appellant was convicted of a violation of Act No. 220 of
1948 (*Bolita*) and sentenced to serve six months in jail. The
*Fiscal* of this Court acquiesces in the reversal of the judg-
ment requested by appellant herein on the ground that the
second error assigned was committed by the lower court.
Said assignment is to the effect that the latter erred in ad-
mitting as evidence the material obtained by virtue of the
search of appellant's house.

In his brief the *Fiscal* correctly summarizes the testimony
of the only witness for the prosecution as follows:

"The only witness presented by the district attorney, detec-
tive Silvestre Vivaldi, testified the following: That on July 17,
1948, policeman Vázquez, corporal Escalona, detective Poventud,.
and he, went to defendant's house and, under a search warrant
procured beforehand, proceeded to search the house having seized
on top of a table two small paper lists with numbers; in a purse
which defendant's wife delivered to them they seized three paper
lists also containing numbers (pp. 13–14 T.E.) ; and in a drawer
of a table they seized a notebook; that the numbers in those lists
are played in connection with the last three figures of the first
prize of the National Lottery of Santo Domingo. This was, in
brief, the testimony of the only witness for The People. The
district attorney waived the remainder of the evidence because
of its cumulative nature.

"In the cross-examination, this witness testified that he ob-
tained the search warrant against the defendant because two
days before the search he passed by the former's house and saw
him in the porch talking to two persons who were in front;
that those persons gave him a packet of lists (p. 18 T.E.) ; that
said packet was folded in about three folds and contained from
three to four papers; that they delivered those papers to the

defendant and went away and he did nothing because he had no search warrant (p. 23 T.E.); that the witness was at a distance of approximately 10 or 12 feet from them; that he does not know whether the inner pages had numbers, that he only saw the outer pages, but that he does not know what those numbers were for (p. 26 T.E.); that it was after he made the search that he found out what the numbers were for. This witness testified on several occasions during cross-examination that he did not know what the papers, which those persons gave to the defendant, were for."

We have carefully read the testimony of witness Vivaldi and it actually shows that in spite of the fact that in the affidavit he signed before the Municipal Judge of Ponce on July 16, 1948 in order to obtain the warrant to search appellant's house, he stated that "...yesterday, July 15, 1948, at 8:00 P. M., and while walking along San Rafael Street of Ponce, I paused in front of defendant's house and noticed that two persons entered therein and delivered to the latter a packet of paper lists and *bolipool* tickets, that then Mr. Villariny stepped inside one of the rooms of his house taking the packet with him," the truth is that he, Vivaldi, was unable to determine at any time that the lists which the two unknown persons gave to appellant in the porch of the latter's house contained numbers of the *bolita* game. Vivaldi's testimony demonstrated affirmatively that it was only *after* appellant's house was searched that this witness was able to determine that the lists he seized contained numbers of said clandestine game. The following is the pertinent portion of his testimony:

"Then were you at a distance of approximately 10 or 12 feet from those persons?

"At such a distance, more or less.

"And from that distance, did you see the packet of folded papers?

"Yes.

"Did you see numbers there, the writing thereon?

"Yes, sir.

"Did you see the numbers? Do you know what numbers they are?

"No, sir.

"Do you know how many numbers were written thereon?

"No, sir, because they·were never in my hands.

"Do you know whether the inner pages contained written numbers?

"I do not know· whether the inner pages had numbers or not.

"Were the numbers written on the outside the only ones you saw?

"Yes.

"Do you mean that from that distance you saw whether they were numbers or letters?

"I saw numbers.

"Didn't you see letters?

"No, because it was a column, as when you add various figures.

"Don't you know what those numbers were for?

"*No.*

"Don't you know, up to this date, what those numbers were for?

"I know what the numbers were for, *because afterwards when I made the search* I seized a similar quantity of lists, I seized lists containing numbers.

"Not so fast, witness. Have you told the court that when the packet was being delivered to the defendant you did not know what those numbers were for?

"*At that time I did not know.*

"Do you mean that you found out what those numbers were for when you made the search and found these papers?

"*Exactly.*

"Look, my question is clear. Have you told the court here, I ask you to repeat it, that you learned what the numbers which those men had were for *when under a search warrant you went in and seized these lists?*

"*Correct.*" (Italics ours.)

Owing to the testimony of the witness Vivaldi, the defense objected to the admission in evidence of the lists seized in appellant's house by virtue of the search warrant on the ground that the seizure was unlawful, since said witness did not know

698

the meaning of the lists which, according to him, he saw being delivered to the appellant two days before obtaining the search warrant, realizing that they were of *bolita* after the search. The lower court admitted the evidence.

██ The fact that the defendant moved for the suppression of the evidence on the same day of the hearing and that, for this reason, said motion was dismissed,[1] did not preclude a request for its suppression during the trial if during the latter the illegality of the seizure was shown. We have so decided. In *People* v. *Nieves*, 67 P.R.R. 283, 285 after ratifying the general rule that the motion should be filed before the trial and the exception thereto enunciated in *People* v. *Capriles*, 58 P.R.R. 551, to the effect that "if it is shown or if it appears from the evidence that the defendant learned for the first time in the course of the trial that the evidence unlawfully obtained was in the hands of the district attorney or that the latter intended to present it against him, the motion to suppress it may be filed even if the proceeding has to be interrupted to decide this collateral question," we also stated that there was another exception to the effect that "in cases where the evidence offered has been unlawfully obtained, *if while the evidence for the prosecution is being introduced, it is made to appear by the direct or cross examination that the evidence was unlawfully obtained*—as we have supposed in the present case—and therefore it is unnecessary to interrupt the proceedings in the case to decide a collateral question,

---

[1] We have held that these motions must be presented prior to the trial. *People* v. *Rodríguez*, 70 P.R.R. 488, and cases therein cited. The fact that in *State* v. *Dersy*, 215 Pac. 34, cited in footnote (1) of *People* v. *Nieves*, 67 P.R.R. 283, 285 the phrase "within a reasonable time before the case is called for trial" was used, does not mean, as appellant argues, that such a motion filed the same day of the trial but prior to the hearing, complies with the rule set forth. We said in *People* v. *Capriles*, 58 P.R.R. 551, 555–6, citing several decisions, that: "What the decisions require in the Federal Courts, as well as in the vast majority of the States and in this same jurisdiction, is that the motion be filed *before the date* set for the trial of the case, so that the proceedings shall not be interrupted in order to receive evidence and decide a collateral question." (Italics ours.)

*the defendant may object to its admission, even if he knew
before the trial that said evidence was intended to be pre-
sented against him and despite the fact that he had moved for
its suppression before the trial and such motion had been
denied."* (Italics ours.)

 Was the evidence in the case at bar unlawfully
obtained? For this to be so, the defendant was bound to
prove that the search warrant was, in its turn, unlawfully
issued. Now, the affidavit which served to show the existence
of probable cause for the issuance of said warrant, could be
challenged, as to its sufficiency, on the ground of affiant's
statements therein. *People* v. *Capriles, supra,* at pp. 559–564
and cases therein cited. That is, the sufficiency of the af-
fidavit must be determined from the facts it contains and upon
which the Judge who issued the search warrant reached the
conclusion that probable cause existed to search appellant's
house. If said affidavit is sufficient, on its face, its sufficiency
can not subsequently, before or after trial, be challenged by
means of proof that the statements made under oath in the
affidavit are false. It can be said that the cases are almost
unanimous in this sense, except when a statute authorizing
such challenge exists.[2] The cases upholding this rule may be
found in the annotation in 5 A.L.R. 2d 394. It is said in
Cornelius on Search and Seizure, 2d ed., § 169 (89), p. 425,
in part:

"Some courts have held that, unless the statute otherwise
provides, as for example the federal code, that where an affidavit
is filed or testimony taken for the issuance of a search warrant
and the affidavit or testimony makes out a prima facie case of
probable cause, the same can not be controverted or disputed
and the warrant thereby nullified. The cases have even gone so
far as to hold that the complainant himself will not be allowed
to dispute the truth of the averments he made in the affidavit so
as to vitiate a . . . warrant . . ."

---

[2] The Federal Espionage Act of 1917 and its corollary, Rule 41 of the
Federal Rules of Criminal Procedure, is an example.

And § 170 thereof reads:

"The defendant at the trial may not dispute or controvert the averments in the affidavit for the search warrant for the purpose of invalidating the search, nor may he cross-examine the person who made the affidavit as to the truth of such averments."

In *Smith* v. *State*, 62 A. 2d 287 (Md., 1948), it was stated:

"The better rule seems to be that the court's consideration of the showing of probable cause should be confined solely to the affidavit itself, and the truth of the alleged grounds stated in the affidavit cannot be controverted . . . by receiving the testimony of the accused and other witnesses. (Authorities) . . . Specifically, the existence of probable cause cannot be negatived by the mere denial by the accused of the fact sworn to. (Citation) We are of opinion that any inquiry as to whether the affidavit, on which the search warrant was based, showed probable cause is confined to the affidavit alone and testimony should not be taken to controvert the truth of the allegations therein."

In *Elms* v. *State*, 26 S. W. 2d 211 (Tex., 1930), a similar situation to the one under consideration arose and on p. 213 it was said:

"There is also complaint of the fact that upon cross-examination of the officers making the affidavit, it appears to have been developed that they did not have full information upon the matters set out in the affidavit. As we understand the authorities, this court has consistently declined to uphold contentions based on a claim that the statements in the affidavit could be shown or had been shown to be untrue, or that the officer was not justified in making the statements. These are matters for the magistrate to whom the affidavit is presented and who acts in a judicial capacity in passing upon the facts thus presented to him. Where the affidavit is sufficient in form and the magistrate accepts and acts upon same, this court declines to go behind the affidavit. (Citation)"

We believe that this should be the prevailing rule and applying it to the facts herein, the lower court did not err in admitting the evidence seized in appellant's house. The

affidavit upon which the search warrant was issued set forth sufficient facts to constitute probable cause. Whether the policeman who made said affidavit lied as to the facts he set forth therein, is a matter which may serve or not as a ground for the proper proceeding against him. However, insofar as the search warrant issued by the municipal judge upon said affidavit is concerned, the same is valid and the evidence obtained during the search was admissible as evidence.

The judgment will be affirmed.